**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Bernice Lee, | No. CV-13-00152-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Melissa Bernice Lee filed an application for Social Security disability insurance benefits in June 2009, alleging a disability onset date of October 2008. Her claim was denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held in June 2011, and the ALJ denied Plaintiff's application. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. Tr. at 1-4.

Plaintiff now appeals the Commissioner's denial of her application for benefits. Doc. 19. For the reasons that follow, the Court will deny Plaintiff's appeal.

**I.    Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole,

1  weighing both the evidence that supports the decision and the evidence that detracts from
2  it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence
3  to support the Commissioner's determination, the Court cannot substitute its own
4  determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**II.    Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a five-step evaluation. The claimant must show (1) she is not currently engaged in substantial gainful employment, (2) she has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work. If at any step the Commission determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to the next step. If the claimant establishes her burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ found that Plaintiff has not engaged in substantial gainful employment since the disability onset date of October 29, 2008, and that she suffers from the severe impairments of degenerative disc disease of the cervical and lumbar spine, obesity, and chronic obstructive pulmonary disease ("COPD"). Tr. at 29. The ALJ found that Plaintiff's depression, fibromyalgia, and peripheral vascular disease were not severe because they did not result in more than minimal limitations in functioning. Tr. at 30. At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the impairments listed in the regulations. Tr. at 31. The ALJ then considered the record and found that Plaintiff has

the RFC to "perform medium work as defined in 20 CFR 404.1567(c)." Tr. at 31. The ALJ concluded that Plaintiff's RFC included "lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking 6 to 7 hours per day, and sitting 6 to 8 hours per day." Tr. at 31. The RFC included no visual limitations and allowed occasional climbing of ladders, ropes, and scaffolds, crawling, and frequent climbing ramps and stairs. Tr. at 31. Finally, the ALJ determined that Plaintiff did not need any manipulative limitations, but there was a need to avoid unprotected heights, moving machinery, dust, fumes, and gases. Tr. at 31. At step five, the ALJ concluded that Plaintiff was capable of her performing past relevant work as a cashier checker, cashier supervisor, car hop, server, payroll clerk, receptionist, inventory clerk, and human resources assistant. Tr. at 35. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. at 35.

Plaintiff's brief raises three challenges to the ALJ's findings. First, she argues that the ALJ erred at step two when he determined that Plaintiff's depression, fibromyalgia, and peripheral vascular disease were not severe. Second, she contends that the ALJ erred by rejecting Plaintiff's symptom testimony without clear and convincing reasons supported by substantial evidence in the record. Third, Plaintiff argues that the ALJ erroneously determined Plaintiff's work capacities without support by substantial evidence in the record.

**A.     Step Two Severity Listings.**

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28 (1985). Impairments are considered "not severe" when "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290. The ALJ determined at step two that Plaintiff's "depression, fibromyalgia, [and] peripheral vascular disease are not severe impairments, because they

do not result in more than minimal limitations in functioning." The ALJ explained in some detail why he did not consider Plaintiff's depression to be a severe impairment. Tr. at 30. In that explanation, the ALJ relies partly on GAF scores which both parties acknowledge are not part of the record in this case. With respect to the other two non-severe ailments, fibromyalgia and peripheral vascular disease, the ALJ provides nothing more than the conclusory statement above to explain why they were not considered severe.

The Court finds that the ALJ failed to show that his conclusion was clearly established by medical evidence. Error at this step may be harmless, however, if the ALJ goes on to discuss the ailments that he deemed non-severe when formulating the RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Because the ALJ proceeded to analyze the effects of Plaintiff's depression, fibromyalgia, and peripheral vascular disease during the RFC assessment, the Court concludes that the error at step two was harmless.

### B.   Plaintiff's Symptom Testimony.

Plaintiff claimed that she has neck and back pain, lower extremity pain, pains associated with fibromyalgia, breathing problems, shoulder pain, depression, and anxiety. She claimed that her conditions limited her to walking for one hour and sitting for no longer than twenty minutes before she must stand. She experiences muscle spasms, takes naps for three to four hours a day, and spends most of her time sitting with her feet elevated.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007) (quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc)). If the claimant meets this first test, and there is no evidence of malingering, the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*,

80 F.3d at 1282. The ALJ may consider at least the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir.2002) (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,792 (9th Cir.1997)).

The ALJ considered the symptom testimony and determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. at 32. He then concluded that that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.

The ALJ noted several reasons for discounting Plaintiff's subjective testimony. He cited objective medical evidence, including MRI results that revealed "only mild spondylosis," that undermine Plaintiff's assertion that back pain is her most disabling problem. Tr. at 32 (citing Tr. at 750). He also cited a residual functional capacity evaluation completed by Julie Ziegelmeyer, a physical therapist, which found Plaintiff was "able to work on a full-time basis." Tr. at 32 (citing Tr. at 729). The ALJ noted that despite "medical issues involving peripheral vascular disease," one treatment note stated that Plaintiff was "stable from a vascular standpoint." Tr. at 32 (citing Tr. at 426). The ALJ also cited Doppler ultrasound results that revealed no deep vein thrombosis. Tr. at 417-418.[1] The ALJ noted that progress notes dated November 24, 2008, showed that Plaintiff underwent successful stenting of the right common iliac artery and that the surgery resulted in a resolution of Plaintiff's symptoms. Tr. at 426. The ALJ also noted that the results from a stress test performed in January 2009 found Plaintiff to have no additional cardiovascular issues. Tr. at 33 (citing Tr. at 424). The ALJ noted that Plaintiff takes only sleeping pills to treat her fibromyalgia and is not currently taking any

---

[1] The ALJ cited to Exhibit 3F at page 28 (corresponding with Tr. at 418), but that page contains a laboratory report from Sonora Quest Laboratories. Tr. at 418. The ALJ appears to have intended to cite the previous page, Exhibit 3F at page 27. Tr. at 417.

- 5 -

pain medication. Tr. at 33.

The ALJ cited other nonmedical evidence to support his conclusion that Plaintiff's symptoms were not credible: Plaintiff appeared healthy at her hearing (Tr. at 33); Plaintiff was fired for reasons unrelated to her disability (Tr. at 32); after her termination, Plaintiff continued to collect unemployment benefits for two years, which required her to assert that she was actively looking for work (Tr. at 32); Plaintiff cares for two children ages three and fifteen, and takes her son to school, vacuums, does dishes, folds laundry, makes simple meals, surfs the internet, pays bills, solves crossword puzzles, and has babysat her grandson at least once (Tr. at 33).

Plaintiff argues that the ALJ's reasons fall short of the clear and convincing standard necessary to reject her subjective testimony. She argues that the ALJ improperly relied on her appearance at the hearing and gave too much weight to her continued smoking. She also argues that her firing in April 2008 for nonmedical reasons (Tr. at 52) should have no bearing on her credibility because her disability onset date is in October 2008 (Tr. at 27). She contends that the ALJ drew an improper inference from her receipt of unemployment benefits and failed to show how her activities of daily living demonstrate that she is not disabled. Finally, Plaintiff argues that the note regarding resolution of vascular symptoms (Tr. at 426) was created in November 2008, and that other notes in the record show continued problems, including an additional surgery in 2009 (Tr. at 423, 539-40, 578-79).

Despite Plaintiff's objections, the Court finds that the ALJ based his conclusion on substantial evidence in the record. His reasons were also specific, clear, and convincing. Where, as here, there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young*, 911 F.2d at 184. The ALJ relied upon a functional capacity evaluation by a physical therapist (Tr. at 729), the fact that Plaintiff did not take pain medication, testimony that Plaintiff may be "invested" in her disabilities (Tr. at 752), and MRI results (Tr. at 750). None of the Plaintiff's objections significantly undermine the validity of that evidence.

In light of this substantial evidence, the Court finds the ALJ's partial reliance on other irrelevant or less valuable evidence to be harmless. For instance, the Ninth Circuit has held that "the fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible." *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (citation omitted). But the Ninth Circuit has also stated that "the inclusion of the ALJ's personal observations does not render the decision improper." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (citations and internal quotation marks omitted).

Similarly, the timing of Plaintiff's the nonmedical termination several months before the disability onset date may detract from the inference that Plaintiff has not been truthful, but inclusion of this evidence does not render the ALJ's conclusion baseless.

Plaintiff's contention that the ALJ should not rely on the receipt of unemployment benefits because the ALJ "did not inquire what work [Plaintiff] might try to do" (Doc. 19 at 26) does not invalidate the ALJ's point that Plaintiff claimed disability while affirming that she was looking for work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (listing the receipt of unemployment insurance benefits as a reason for discounting a claimant's pain testimony).

Finally, while the ALJ cites a treatment note that predates evidence of continued vascular problems, he also cites cardiovascular follow up notes from August 13, 2009, and the results of a January 2009 stress test. Tr. at 33. These citations demonstrate that the ALJ considered later evidence of vascular disease as well.

C. **Residual Functional Capacity.**

1. **Medical Evidence.**

Plaintiff contends that the ALJ erred by determining her work capacity without support by substantial evidence in the record. Plaintiff finds the RFC finding that she is capable of medium work to be objectionable because the ALJ gave "full consideration" to the opinion of a physical therapist who stated that Plaintiff should be limited to light

1 work. Tr. at 34 (citing Exhibits 26F and 28F); see Tr. at 703, 729. Plaintiff argues that
2 the ALJ articulated no basis for finding that Plaintiff was capable of medium work.
3 Doc. 19 at 29.

4 There is no requirement that the RFC be based entirely on the residual functional
5 capacity assessment of a physician. Instead, 20 C.F.R. § 404.1545(a)(3) requires that the
6 ALJ form the RFC based on all relevant medical evidence and other evidence in the
7 record. The ALJ considered the residual functional capacity assessment completed by
8 the physical therapist and the evaluations of the state agency's reviewing physicians.
9 Tr. 34-35. All of those opinions found Plaintiff could perform a range of light work. *See*
10 Tr. at 703-706, 512-519, 582-589. The ALJ found that in light of the other record
11 evidence, the opinions of these physicians were too limiting, and that Plaintiff was
12 actually capable of medium work.

13 The ALJ also considered the opinion of Dr. Steingard, who performed a mental
14 evaluation and opined that Plaintiff's depression led to defects in concentration, but that
15 Plaintiff had "no more than mild mental limitations." Tr. at 33 (citing Exhibit 17F).

16 By finding that Plaintiff needed fewer restrictions than the examining physicians
17 opined, the ALJ at least partially rejected their opinions. To reject the opinion of
18 examining medical experts, the ALJ must give clear and convincing reasons. *Regennitter*
19 *v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999) (citing *Lester*
20 *v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1995)). The ALJ fails to explain its reasons for
21 discounting the medical opinions beyond stating that "their opinions were not entirely
22 consistent with the greater objective record." Tr. at 35. This explanation is not sufficient
23 to satisfy Ninth Circuit standards.

24 The Commissioner argues that the ALJ's failure to explain his rational is
25 ameliorated by his reliance on the opinion of Dr. Fruchtman. Doc. 20 at 18. This
26 argument is unavailing because Dr. Fruchtman is not mentioned in the ALJ's opinion,
27 and the Court is precluded from relying on "*post hoc* rationalizations that attempt to intuit
28 what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554

1 F.3d 1219, 1225 (9th Cir. 2009).

### 2. Harmless Error.

Despite the ALJ's improper decision to discount the opinions of medical experts, the Commissioner argues that the error was harmless. The Court agrees. Had the ALJ credited the most restrictive medical opinions in the record, it would have resulted in an RFC that restricted Plaintiff to light work. The vocational expert testified that Plaintiff's past jobs as a cashier, lead supervisor cashier, carhop, and server all qualified as light work. Tr. at 70-71. The opinions of the medical professionals would not have prevented Plaintiff from performing these light work jobs. The Court accordingly finds that a proper consideration of those opinions would still have led the ALJ to conclude that Plaintiff is not disabled.

**IT IS ORDERED** that Plaintiff's appeal of the Social Security Commissioner's denial of her application for benefits (Doc. 19) is **denied.**

Dated this 11th day of September, 2013.

_____
David G. Campbell
United States District Judge